IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| MICHAEL MESKER, | ) |
| *Plaintiff,* | ) |
| vs. | ) Case No. 1:17-CV-85-RLM-TAB |
| RELIANCE STANDARD LIFE INSURANCE COMPANY, | ) |
| *Defendant.* | ) |

<u>OPINION AND ORDER</u>

In 2010, Michael Mesker was forced to stop working at the Indiana State Teacher's Association due to complications from HIV/AIDS. Mr. Mesker applied for and was awarded a long-term disability insurance policy issued by Reliance Standard Life Insurance Company ("Reliance"). Five years later, Reliance terminated Mr. Mesker's claim and affirmed that decision in its administrative appeals process.

Mr. Mesker brought this suit and challenged the timeliness of Reliance's decision. The late Judge Larry McKinney held that the applicable standard of review is arbitrary and capricious, because Reliance substantially complied with the ERISA's procedural regulations and didn't render an untimely decision. The parties' cross-motions for summary judgment are now before the court. For the reasons stated below, the court denies Mr. Mesker's motion and grants Reliance's motion.

I. BACKGROUND

In October 2010, Mr. Mesker submitted a claim for long term disability benefits to Reliance, and was approved for long term disability benefits effective December 14, 2010. The policy promised payment to Indiana State Teacher's Association employees of long term disability benefits under the following conditions:

> INSURING CLAUSE: We will pay a Monthly Benefit if an Insured:
>
>     (1)    is Totally Disabled as the result of a Sickness or Injury covered by this policy;
>     (2)    is under the regular care of a Physician;
>     (3)    has completed the Elimination Period; and (4) submits satisfactory proof of Total Disability to us.
> . . .
>
> "Totally Disabled" and "Total Disability" mean, that as a result of an Injury or Sickness:
>     (1)    during the Elimination Period and for the first 60 months for which a Monthly
> Benefit is payable, an Insured cannot perform the material duties of his/her Regular Occupation;
> …
>
>     (2) after a Monthly Benefit has been paid for 60 months, an Insured cannot perform the material duties of Any Occupation. We consider the Insured Totally Disabled if due to an Injury or Sickness he or she is capable of only performing the material duties on a part-time basis or part of the material duties on a Full-time basis.
> . . .
>
> "Any Occupation" means an occupation normally performed in the national economy for which an Insured is reasonably suited based upon his/her education, training or experience.

In October 2010, infectious disease specialist Dr. Steven Norris completed an attending physician's statement in support of Mr. Mesker's long-term

disability benefits claim in which he stated that Mr. Mesker had been diagnosed with HIV/AIDS, was unable to sit, stand, walk, or drive for more than an hour over the course of an eight-hour workday, and was therefore unable to return to work. Dr. Norris also indicated that Mr. Mesker had reached maximum medical recovery and wasn't expected to improve over time.

Reliance approved Mr. Mesker's claim on January 24, 2011, with a gross monthly benefit amount of $2,666.64 payable retroactively to December 14, 2010. Mr. Mesker applied for social security disability income benefits as a result of his HIV/AIDS, peripheral neuropathy, chronic fatigue syndrome, and fibromayalgia in July 2010. Mr. Mesker's social security benefit claim was initially denied. Upon review, administrative law Judge Stephen E. Davis rendered a favorable decision, and Mr. Mesker was awarded full benefits.

Dr. Norris's February 2015 office visit note documented a normal physical examination negative for fever, chills, weight loss, malaise and fatigue, congestion, sore throat, nausea, vomiting, diarrhea, back pain, tremors, seizures, depression and memory loss among others.  Mr. Mesker reported preferring Stribild to Atripla and having "no trouble" with it. Mr. Mesker 's CD4 count was 546 and his viral load less than 20. Dr. Norris's impression was that Mr. Mesker was "doing well,"  and had no new HIV symptoms.

On July 29, 2015, Reliance informed Mr. Mesker that it had began its review of his eligibility for continued benefits under the policy and requested completion of several forms. It followed up on the requested information on

August 13 and 28. On or about August 27, 2015, Dr. Norris completed the attending physician's statement for continued benefits and reported that Mr. Mesker was now treated with Stribild for his HIV infection and "experienced declining health."

In January 2016, Reliance provided further notice about the change of definition of disability under the policy, invited Mr. Mesker to submit any medical or vocational information he wanted Reliance to consider in its review of his continued eligibility for benefits, and requested completion of several forms including an activities of daily living questionnaire.

In February 2016, Mr. Mesker provided the completed questionnaire. Mr. Mesker confirmed taking Stribild for his HIV infection as well as Bactrim for opportunistic infections.

Reliance requested updated medical records from Mr. Mesker's treating physicians on February 23, 2016, and provided a copy of the request to Mr. Mesker. On or about February 26, 2016, Reliance received Dr. Norris's records. Dr. Norris's office note dated September 8, 2015 confirmed that Mr. Mesker was still treated with Stribild without any side effects other than lactose intolerance. Dr. Norris noted that Mr. Mesker was doing well, experienced no new health issues and lived in Las Vegas three months out of the year. Mr. Mesker's viral load was 20, his CD4 count 500 and his testosterone levels were normal.

Reliance received updated records from Dr. Norris in April. Mr. Mesker's April 5, 2016 office visit note documented a normal physical examination without

any abnormalities or reports of depression, memory loss, pain, fever, chills, weight loss, malaise/fatigue or cold symptoms. Dr. Norris confirmed that Mr. Mesker's HIV infection remained asymptomatic with a viral count of less than 20 and a CD4 count of 634. Dr. Norris noted that Mr. Mesker's testosterone levels were normal, he had no major health effects and was doing well. It was noted that Mr. Mesker continues to live in Las Vegas half of the year.

Later in April, Marianne P. Lubrecht, BSN, RN completed her review of Mr. Mesker's medical records and noted that "[p]er examiner, Dr. Economan has retired and there are no additional records. Claimant advised he is solely seeing Dr. Norris, infectious disease." Based on Dr. Norris's updated records, she opined that Mr. Mesker's "HIV remains under excellent control. There is no mention in recent records of chronic cervical/lumbar pain, fatigue or headaches. Claimant appeared to have regained his prior level of work function, if back pain does continue to an issue while medium exertion may not be reasonable, he would at least be capable of sedentary function."

Based on Ms. Lubrecht's opinion regarding Mr. Mesker's residual functional capabilities, Jody Barach, M.S., LPC, C.R.C., C.C.M. completed a residual employability analysis. Ms. Barach opined that Mr. Mesker would have acquired numerous transferable skills and abilities as a microcomputer support specialist as well as a user supper analyst and a secretary. Two days later, Reliance terminated Mr. Mesker's claim as of May 3, 2016, explaining that as of

December 14, 2015, Mr. Mesker needed to show that he was unable to perform the duties of any occupation. Reliance explained:

> Although you report many current medical conditions, your recent medical records do not discuss many of these conditions. You report that your immune system is weak and your health continues to decline; however, your CD4 level was [634][1] and your viral load is undetectable. Dr. Norris even comments that you have "asymptomatic HIV infection." Your complaints regarding your mouth and throat are noted as an ongoing problem, but you declined referral to a specialist. Although you may continue to treat for ongoing medical conditions, these conditions are not present at a level that would prevent you from returning to any occupation . . . .

Mr. Mesker, through counsel, requested a copy of the claim file, the policy documents, and policies and procedures regarding processing of claims. Reliance forwarded the requested documents the following day.

Mr. Mesker says Reliance terminated his benefits without any medical review by a physician. Mr. Mesker also points out that in August 2016, Dr. Norris confirmed that Mr. Mesker continues to suffer with the symptoms of nausea, constant fatigue, anxiety, loss of attention span, back pain, constant diarrhea, memory loss, and confusion. Dr. Norris indicated that Mr. Mesker was taking Genvoya to treat his HIV, but was experiencing side effects including nausea, vomiting, and diarrhea. Dr. Norris further indicated that Mr. Mesker was unable to work and was disabled from performing the material duties of any occupation.

---

[1] The original report stated a CD4 level of 834, but Reliance admits in its brief that it was a typographic error.

On October 6, 2016, Mr. Mesker submitted an appeals package that contained: copies of Mr. Mesker's medical records; an August 2016 treating physician's statement from Dr. Norris indicating that Mr. Mesker was totally disabled from performing the material duties of any occupation; a complete copy of Mr. Mesker's SSDI file; a bathroom log completed by Mr. Mesker in which he noted an average of eight bathroom visits per day in which he experiences a combination of diarrhea, vomiting, bloody stool, and an accident requiring a change of underwear, as well as a one month timespan that included eight accidents in which he was unable to make it to the bathroom on time; and a daily symptom log in which Mr. Mesker described symptoms including sleeping every two to three hours, extreme fatigue, nausea, vomiting, diarrhea, arthritis, depression, and anxiety.

Reliance sent a request for updated records to Dr. Norris on November 16 and again on November 29. Reliance followed up on the request for information. On November 29, Reliance received Dr. Norris's notes from Mr. Mesker's April 5 office visit. On December 2, 2016, Reliance discussed Dr. Norris's recent medical records with its clinical staff.

On December 5, Reliance referred the matter to Dane Street for scheduling of an independent medical examination of Mr. Mesker by a physician specializing in infectious diseases. On December 13, 2016 and again on January 3, 2017, Reliance followed up on the referral for scheduling of an independent medical examination. That same day, Reliance was informed that Dane Street didn't have an infectious disease physician in its network performing independent medical examinations in the Indianapolis area and continued its search including contacting internists regarding performing such examination. Dane Street was only able to locate a family physician with an expired board

certification in internal medicine almost 100 miles away from Mr. Mesker. Reliance informed Mr. Mesker that it had been unable to schedule an independent medical examination due to a lack of infectious disease specialists within a reasonable distance to Mr. Mesker's residence and referred the file for an independent medical review.

On January 9, Reliance hired Dr. Jose Stoute, infectious disease specialist, to generate a record review. Reliance received Dr. Stoute's report a week later. Dr. Stoute tried to discuss Mr. Mesker's condition with Dr. Norris, but couldn't reach him and his office didn't return Dr. Stoute's messages.

In his report, Dr. Stoute opined that Mr. Mesker's reported complaints of fatigue and recurrent diarrhea in the morning couldn't be attributed to his HIV infection. He noted that the fatigue could possibly attributed to his antiviral medications, but considered that unlikely. Dr. Stoute further reported that, based on Mr. Mesker's medical records, his HIV infection was well controlled and that he had a good prognosis. Given the lack of support for Mr. Mesker's fatigue complaints, Dr. Stoute said that Mr. Mesker 's medical records didn't provide any objective evidence of any functional impairment and that Mr. Mesker had the capacity for sedentary work involving sitting most of the time with walking or standing for brief periods. Dr. Stoute certified that he wasn't compensated for this or any other independent review activities dependent on the specific outcome of this case or other cases.

Reliance upheld its determination to terminate Mr. Mesker's benefits. Reliance discussed Mr. Mesker's medical records and explained that the ongoing treatment records don't support a level of impairment consistent with an inability

to work as of May 1, 2016 and going forward. To support its findings, Reliance pointed to Dr. Stoute's opinion and the residual employability analysis, which had identified sedentary occupations suitable for Mr. Mesker. This suit followed.

## II. STANDARD OF REVIEW

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In reviewing cross-motions for summary judgment, a court must apply this standard to both motions and view all facts and draw all reasonable inferences in the light most favorable to the party opposing each motion. Tate v. Long Term Disability Plan for Salaried Emps. of Champion Int'l Corp. #506, 545 F.3d 555, 559 (7th Cir. 2008).

The Employee Retirement Income Security Act of 1974 governs the Indiana state teacher's association disability plan. With respect to an employee benefit plan, a plaintiff may bring an action "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. §1132(a)(1)(B). A court considers the denial of benefits *de novo* unless the plan grants the plan administrator discretionary authority to construe policy terms. Cheney v. Standard Insurance Company, 831 F.3d 445, 449 (7th Cir. 2016) (*citing* Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989)). If the plan grants such authority, the court reviews only for abuse of that

discretion—the deferential arbitrary and capricious standard. Fontaine v. Metropolitan Life Ins. Co., 800 F.3d 883, 885 (7th Cir. 2015); Holmstrom v. Metropolitan Life Ins. Co., 615 F.3d 758, 767 n.7 (7th Cir. 2010) (*citing* Raybourne v. Cigna Life Ins. Co. of New York, 576 F.3d 444, 449 (7th Cir. 2009)).

Before this summary judgment motion, Mr. Mesker filed a motion to determine the standard of adjudication [Doc. No. 12], and Judge McKinney held that the applicable standard is arbitrary and capricious [Doc. No. 25]. Mr. Mesker relies on his argument to Judge McKinney that his claim is entitled to *de novo* review, because Reliance notified Mr. Mesker of its determination after the applicable regulatory deadlines. Judge McKinney held that the deadline was tolled and Reliance substantially complied with the guidelines. Mr. Mesker hasn't asked the court to reconsider the previous ruling, so Judge McKinney's decision stands and arbitrary and capricious remains as the applicable standard of review.

III. DISCUSSION

Under the arbitrary and capricious standard, an administrator's judgment won't be overturned if the administrator made "an informed judgment and articulates an explanation for it that is satisfactory in light of the relevant facts." Osbun v. Auburn Foundry, Inc., 293 F. Supp. 2d 863, 868 (N.D. Ind. 2003) (*citing* Carr v. Gates Health Care Plan, 195 F.3d 292, 294 (7th Cir.1999)). In other words, it's not the court's function to "decide whether [it] would reach

the same conclusion as the [administrator] or even rely on the same authority." Id. Rather, the court can only overturn the decision if it finds an abuse of discretion; that is, the decision must be "not just clearly incorrect but downright unreasonable." Fuller v. CBT Corp., 905 F.2d 1055, 1058 (7th Cir.1990); Carr v. Gates, 195 F.3d at 294. The question isn't whether the court agrees with Reliance's decision, but whether rational support in the record supports Reliance's decision. *See* Geiger v. Aetna Life Ins. Co., 845 F.3d 357, 362 (7th Cir. 2017).

There's no dispute as to whether Mr. Mesker suffers from a disabling illness. Mr. Mesker was diagnosed with HIV in 2007 at which time he also was informed that his infection had progressed to AIDS. Human immunodeficiency virus, commonly known as HIV, is a virus that attacks the body's immune system— specifically the CD4 cells, often called T cells. Over time, HIV can destroy so many of these cells that the body can't fight off infections and disease. These special cells help the immune system fight off infections. Untreated, HIV reduces the number of CD4 cells in the body. This damage to the immune system makes it harder and harder for the body to fight off infections and some other diseases. Opportunistic infections or cancers take advantage of a very weak immune system and signal that the person has acquired immunodeficiency syndrome, commonly known as AIDS. *See* https://www.hiv.gov/hiv-basics/overview/about-hiv-and-aids/what-are-hiv-and-aids.

Mr. Mesker began suffering from symptoms of HIV/AIDS that included extreme fatigue, nausea, uncontrollable chronic diarrhea, decreased appetite, flu-like symptoms, and oral thrush, all of which are common. Ultimately, Mr. Mesker was forced to stop working in June 2010 after his condition deteriorated to the point that his primary care physician Dr. Dale Economan ordered him off work indefinitely. Mr. Mesker has also been diagnosed with fibromayalgia.

To continue receiving long term disability benefits under the plan, Mr. Mesker is required to demonstrate that as a result of sickness or injury he was unable to perform the material duties of any occupation from December 14, 2015 going forward. In support of the initial review, Mr. Mesker submitted evidence that consisted of three medical visits with Dr. Norris and Mr. Mesker's activities of daily living questionnaire. The questionnaire cited numerous medical conditions— namely, his chronic pain (fibromayalgia), incontinence, and chronic weakness. Although Mr. Mesker says in his questionnaire that his "immune system is weak" and "his health continues to decline," Reliance determined that the recent records didn't discuss many of the conditions Mr. Mesker complained of having. Mr. Mesker was diagnosed with fibromayalgia during his February 2015 visit. But on September 8, 2015, Dr. Norris cited that there weren't any new health effects other than thrush. At that visit, Mr. Mesker didn't mention any new symptoms or elaborated on any recurring symptoms. The September 8, 2015 appointment confirmed that Mr. Mesker was still treated with Stribild without any side effects other than lactose intolerance. Dr. Norris noted that Mr.

Mesker was doing well, experienced no new health issues and lived in Las Vegas three months out of the year. Mr. Mesker's viral load was 20, his CD4 count 500 and his testosterone levels were normal.

The results for the April 2016 visit were very similar to the former: Mr. Mesker's HIV infection remained asymptomatic [2] with a viral count of less than 20 and a CD4 count of 634, Mr. Mesker's testosterone levels were normal, had no major health effects and continued to live in Las Vegas throughout the year. On its face, it appears that Reliance made an "informed judgment" in light of the evidence in front of them.

In addition to the records already mentioned, Mr. Mesker submitted records from two medical visits he made after his benefits were terminated. He also submitted a bathroom log that corresponds to the symptoms on which his treating physicians made objective findings.

---

[2] "Asymptomatic HIV infection" refers to the second of three stages of HIV infection, also known as the Chronic HIV Infection stage, in which patients no longer exhibit the flu-like symptoms of fever, headache, and rash that are characteristic of the initial acute HIV infection, and have CD4 counts greater than 200 without any opportunistic infection. *See* https://aidsinfo.nih.gov/understanding-hiv-aids/fact-sheets/19/46/the-stages-of-hiv-infection (last accessed December 11, 2017).

However, during this stage patients may still suffer from a variety of symptoms and complications including cardiovascular disease, cancer, kidney disease, liver disease, persistent immune dysfunction, inflammation, osteopenia or osteoporosis, neurocognitive disease, and organ damage. Deeks, Steven G et al. "The end of AIDS: HIV infection as a chronic disease." *The Lancet*, Volume 382, Issue 9903, 1525 - 1533. http://www.thelancet.com/journals/lancet/article/PIIS0140-6736(13)61809-7/fulltext (last accessed December 11, 2017).

Mr. Mesker argues that Reliance gave more weight to its staff than to Mr. Mesker's treating physicians. Under ERISA, treating physicians' opinions aren't entitled to more deference than the opinions of physicians that the administrator hired, but administrators can't arbitrarily "refuse to credit a claimant's reliable evidence, including the opinions of a treating physician." *See* Black & Decker Disability Plan v. Nord, 538 U.S. 822, 833–834 (2003). Dr. Stoute discounted Mr. Mesker's complaints of fatigue and fibromayalgia, as "unsupported by any diagnosis" and "unjustified." Dr. Stoute also said Mr. Mesker's incontinence "isn't related to an infectious agent" such as HIV, because Mr. Mesker only experiences those symptoms in the morning as opposed to throughout the day. Dr. Stoute considered Mr. Mesker's complaints to be "very subjective" and his symptoms "can't be contributed to his HIV infection." Although Reliance appeared to be struck by the "asymptomatic HIV" diagnosis, the information Dr. Norris provided Dr. Stoute was consistent with the objective evidence Reliance had in making its initial determination. Dr. Stoute's findings and analysis as to how he reached his conclusions aren't unreasonable under the highly deferential standard of review.

Mr. Mesker also argues that the court should consider a conflict of interest in its analysis, but Reliance's procedures (generally, but most importantly, in this case) are "rife with steps taken to promote accurate and unbiased decision making." *Compare* Fessenden v. Reliance Standard Life Ins. Co., 2016 U.S. Dist. LEXIS 173407, at *5 (N.D. Ind. Dec. 15, 2016). At first glance, it seemed odd to

the court that Reliance managed to secure a qualified physician to make an independent review of Mr. Mesker's evidence, but couldn't locate a physician within a 100-mile radius of Fishers, Indiana to conduct an in-person examination. But Reliance clarified at oral argument that Dane Street solicits physicians from a limited network to maintain the integrity of the claims process and to avoid conflicts of interest. There was no independent medical examination, Reliance managed to secure an infectious disease specialist who performed an independent medical review—Dr. Stoute, who signed a conflict of interest attestation. In addition to its standard procedures, Reliance made several attempts to contact Dr. Norris. The record doesn't show any evidence that suggests a conflict of interest.

Although there is substantial evidence on both sides of the disability issue, *see* Fessenden v. Reliance Standard Life Ins. Co., 2018 WL 461105, at *1 (N.D. Ind. Jan. 17, 2018), the court can't overturn Reliance's decision because the record doesn't show that the rejection was "downright unreasonable." *Quoting* Williams v. Aetna Life Ins. Co., 509 F.3d 317, 321-22 (7th Cir. 2007). The court must affirm the plan's decision under the arbitrary and capricious standard. *See* Fessenden v. Reliance Standard, 2018 WL 461105, at *6 (*quoting* Davis v. Unum Life Ins. Co. of America, 444 F.3d 569, 578 (7th Cir. 2006)) ("[R]eaching a decision amid . . . conflicting medical evidence is a question of judgment that should be left to [the Plan administrator] under the arbitrary-and-capricious standard.").

Mr. Mesker tendered a sur-reply, stating that Reliance "raised new issues" in its reply brief in regards to the proper standard of adjudication. Reliance's reply brief said that, although it didn't issue Mr. Mesker with a decision regarding his appeal within 90 days after submission (as required by 29 CFR 2560.503*1), Judge McKinney held that Reliance's time to render a decision was tolled. In his sur-reply, Mr. Mesker says Reliance is raising a new issue because Judge McKinney didn't specifically address the tolling issue. Instead, Judge McKinney found Reliance to be in "substantial compliance" with the regulatory guidelines. Even if Reliance were to benefit from tolling, "special circumstances" didn't exist that would allow for Reliance to render a late decision. To support his argument, Mr. Mesker cites to Judge Simon's analysis in <u>Fessenden v. Reliance Standard Life Ins. Co</u>:

> But the substantial compliance doctrine doesn't always save the day from administrative foul-ups. The Second Circuit recently held that an insurer can lose the benefit of the deferential standard of review when it fails to comply with regulatory requirements relating to time limits for making claim decisions. <u>Halo v. Yale Health Plan, Director of Benefits & Records Yale Univ.</u>, 819 F.3d 42 (2nd Cir. 2016). In other words, the court held that the substantial compliance doctrine may be inapplicable where deadlines are concerned. <u>Id.</u> at 55-58.

2018 WL 4661105, at *2.

Mr. Mesker also says that the doctrine of substantial compliance doesn't apply to the department of labor's regulatory deadlines. *See* <u>Edwards v. Briggs & Stratton Retirement Plan</u>, 639 F.3d 355, 363 (7th Cir. 2011) ("we decline to import the substantial compliance deadline into the matter of administrative

duties under ERISA."). Mr. Mesker urges the court to reject the "substantial compliance" doctrine in this case, based on the reasoning in both Edwards v. Briggs & Stratton and in Judge Simon's analysis in Fresseden v. Reliance Standard.

Reliance moves to strike the sur-reply, because Mr. Mesker didn't comply with local rule 56-1. The rule provides in part:

> **(d) Surreply.** A party opposing a summary judgment motion may file a surreply brief only if the movant cites new evidence in the reply or objects to the admissibility of the evidence cited in the response. The surreply must be filed within 7 days after the movant serves the reply and must be limited to the new evidence and objections.

Reliance says that Mr. Mesker neither addressed new evidence in his sur-reply nor objected to any evidence Reliance raised in its reply. To the extent Mr. Mesker may claim that his sur-reply is in response to the arguments made by Reliance's reply, Reliance merely responded to Mr. Mesker's arguments made in his responsive brief regarding the standard of adjudication.

Reliance is right that Mr. Mesker doesn't raise new issues in his sur-reply. Mr. Mesker's earlier submissions discussed the standard of adjudication and Reliance responded in its reply brief. As mentioned previously, Mr. Mesker didn't ask the court to reconsider Judge McKinney's ruling.

In addition, Edwards v. Briggs & Stratton doesn't establish that Reliance must strictly comply with the regulatory guidelines. In that case, the plaintiff didn't file a timely appeal. The court said substantial compliance is used in favor of the plan administrator (in this case, Reliance), not the plan participant. *See*

Edwards v. Briggs & Stratton Ret. Plan, 639 F.3d 355, 361–362 (7th Cir. 2011) ("In general the doctrine of substantial compliance means that a ***plan administrator*** who has violated a technical rule under ERISA, such as regulations governing the contents of letters denying claims for benefits, may be excused for the violation if the administrator has been substantially compliant with the requirements of ERISA.") (emphasis added). Mr. Mesker's sur-reply doesn't comply with the local rules, so the court grants Reliance's motion to strike.

IV. CONCLUSION

The court DENIES plaintiff's motion for summary judgment [Doc. No. 39], GRANTS defendant's motion for summary judgment [Doc. No. 42], and GRANTS defendant's motion to strike plaintiff's sur-reply [Doc. No. 59]. The Clerk shall enter judgment in favor of the defendant and against plaintiff, affirming the denial of long term disability benefits to plaintiff under the defendant's plan.

SO ORDERED.

ENTERED:   August 2, 2018

s/ Robert L. Miller, Jr.
Judge, United States District Court

Electronically distributed to all
registered counsel of record via ECF.